# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NATIONAL EXCHANGE BANK AND TRUST**
as Trustee for the Fife Family Trust A,

        **Plaintiff,**

    v.                                        **Case No. 11-CV-134**

**PETRO-CHEMICAL SYSTEMS, INC., et al.,**

        **Defendant.**

## ORDER GRANTING THE PLAINTIFF'S REQUEST FOR LITIGATION COSTS

### I.    FACTS AND PROCEDURAL HISTORY

Currently pending before the court is the petition of the plaintiff, National Exchange Bank and Trust's ("NEBAT"), for attorneys' fees and other litigation costs. The plaintiff, having prevailed on its claim against the defendants under the Resource Conservation and Recovery Act ("RCRA"), may be awarded "costs of litigation (including reasonable attorney and expert witness fees) … whenever the court determines such an award is appropriate." 42 U.S.C. § 6972(e). The court previously found that the plaintiff is a prevailing party and that such an award would be appropriate. (Docket No. 149 at 2.)

Although there are five defendants in this action, Tanknology has assumed a joint defense, (Docket No. 87), and thus, for present purposes, the court shall generally refer to Tanknology alone and use the singular "defendant." In instances where it is necessary to refer to co-defendant Petro-Chemical Systems, Inc. ("Petro-Chemical"), the court shall do so explicitly.

On a related point, the court notes that the defendant argued in a footnote that "any fees requested for litigating its claim against Petro-Chemical … should be reduced from the Plaintiff's fee petition" on the basis that Petro-Chemical has not been found responsible under RCRA. (Docket No. 143 at 24, n. 14.) The defendant does not offer any argument as to how time spent prosecuting the RCRA claim against Petro-Chemical might be differentiated from that related to Tanknology, provide any legal authority for excluding or reducing expenses in such circumstances, propose an appropriate deduction, or suggest a means by which the court may be able to analyze this issue. A footnote, especially one spanning only a single inconsequential sentence, is not a proper means for presenting an entirely new line of argument or preserving a tangential objection. Although the defendant slightly expands this argument in its response to the plaintiff's supplemental fee petition, (six sentences, again without supportive citation to case law), (Docket No. 155 at 2-3), this argument remains undeveloped and in any event, was waived by failing to properly raise it earlier. Thus, the court disregards this undeveloped and improperly presented argument.

The facts of this case are more fully set forth in other decisions of the court. <u>See, e.g.</u>, <u>Nat'l Exch. Bank & Trust v. Petro-Chemical Sys.</u>, 2012 U.S. Dist. LEXIS 171134 (E.D. Wis. Dec. 3, 2012). It is sufficient to note here that Tanknology was hired to test an underground fuel oil storage tank located on a residential property NEBAT held as trustee. After completing this test, two pipes were reconnected incorrectly, leading to hundreds of gallons of fuel oil spilling into the basement and eventually into the earth below the home. Following trial, judgment was entered awarding the plaintiff over $400,000.00 in damages, and the court entered a permanent injunction requiring Tanknology to clean up the property. (Docket Nos. 148, 149.)

## II. ATTORNEYS' FEES

Attorneys' fees are calculated using the lodestar method. Mathur v. Bd. of Trs. of S. Ill. Univ., 317 F.3d 738, 742 (7th Cir. 2003). The lodestar is determined by multiplying the number of hours an attorney could be reasonably expected to spend on a matter by a reasonable hourly rate. Id.; City of Burlington v. Dague, 505 U.S. 557, 559 (1992). A reasonable hourly rate is determined by looking to prevailing market rates within the relevant community, and thus a lodestar calculation aims to approximate what a prevailing attorney would expect to receive from a paying client. Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)); (citing Dague, 505 U.S. at 566; Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 609 (2001)).

Once this lodestar is calculated, the court may then adjust this figure up or down after considering a variety of well-established factors, including

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

Mathur, 317 F.3d at 742 and fn. 1

### A. Litigation Costs Incurred After July 30, 2012

The defendant argues that the plaintiff is not entitled to recover any litigation costs incurred after July 30, 2012 because on that date the defendant notified the plaintiff that it was prepared to undertake a full remediation of the fuel leak on the property. (Docket No. 143 at 10-15.) The plaintiff refused this offer. Thus, in the defendant's view, the plaintiff could have

obtained all that it was entitled to and the further litigation was simply an effort to churn attorneys' fees.

The court can quickly dispose of this argument. If the defendant was truly offering the plaintiff all it could hope to obtain at trial and the defendant wanted to cut off its potential liability for further fees and costs, the proper means of doing so, even in a case such as this arising in equity, was by way of an offer of judgment under Fed. R. Civ. P. 68. See Chathas v. Local 134 IBEW, 233 F.3d 508, 511 (7th Cir. 2000) ("Rule 68 offers are much more common in money cases than in equity cases, but nothing in the rule forbids its use in the latter type of case."). There was no such offer here.

But more importantly, the defendant's offer, (Docket No. 93-1), was incomplete. It is simply inaccurate for the defendant to call its offer "unconditional." (See Docket No. 143 at 5.) Even the defendant's own expert qualifies the extent of the offer when he states that it afforded the plaintiff "essentially" the relief the plaintiff was seeking under RCRA. (Docket No. 145-1 at 9.) There is no requirement that a plaintiff, even when it might later seek reimbursement from the defendant for litigation costs, settle for anything less than what it is lawfully entitled to obtain should it prove its case in court.

The plaintiff believed that, because the defendant's offer did not include an admission of liability under RCRA, acceptance of the defendant's offer and successful remediation of the property would have foreclosed the plaintiff from recovering attorneys' fees and costs it had incurred up to that point. (See Docket No. 92 at 4-5 (citing Avondale Fed. Savings Bank v. Amoco Oil Co., 170 F.3d 692, 694-95 (7th Cir. 1999)).) Thus, the plaintiff proposed a counter-offer to the defendant, (see Docket No. 93-2), whereby the defendant would accept liability under RCRA and enter into a consent decree requiring it to clean up the property.

4

The defendant indicates that its reason for rejecting this counter-offer was to avoid admitting liability under the plaintiff's RCRA claim. (Docket No. 143 at 6.) The defendant disagrees as to whether acceptance of the offer would have necessarily foreclosed the plaintiff from recovering its fees and costs but acknowledges that it sought to reserve the ability to challenge any demand for attorneys' fees and costs (Docket No. 143 at 5-6.) The defendant does not specify the basis for any such challenge.

Moreover, the defendant's proposed offer of settlement was incomplete in that it would not have resulted in a consent decree or injunction. While the distinction between a settlement agreement and a consent decree might be of little consequence if everything went as planned and the property was promptly and successfully cleaned up, a consent decree affords the plaintiff greater protection if disputes should arise. Again, obviously this distinction was significant here because it apparently contributed to the defendant's rejection of the plaintiff's counter-offer.

The conduct of the parties is itself evidence of the gulf between their respective settlement positions and how the defendant's offer was not comprehensive. The plaintiff found the defendant's offer so insufficient it concluded it was better to risk the possibility that it would lose everything (and thus have to shoulder the cleanup and litigation costs itself) than accept the offer. Conversely, the defendant found it better to reject the plaintiff's counter-offer and thus not only risk liability for the plaintiff's further litigation costs but also accept the certainty of its own subsequent defense costs.

The court finds no merit to the defendant's suggestion that the plaintiff rejected the defendant's settlement offer simply as a means to drive up its litigation costs, which it knew it would attempt to shift to the defendant. If the conduct of either party could be best characterized as needlessly protracting this litigation, a strong argument could be made that it was actually the

defendant. After all, it was the party that rejected the plaintiff's counter-offer, leading to substantial expense for the plaintiff, only to give the plaintiff everything it demanded on its RCRA claim at nearly the last possible moment. One might infer from such conduct that it was the defendant who was attempting to leverage the potential of incurring extensive litigation costs against the plaintiff in the hopes of pressuring it to accept whatever the defendant offered. The court does not impugn such motives to the defendant; the court raises the point here only to further explain its rationale for dismissing the defendant's charge that the plaintiff rejected the defendant's offer to needlessly rack up its litigation costs.

This is a simple matter of the parties attempting to agree to terms to settle this matter short of trial. When those negotiations failed to achieve a mutually agreeable resolution, the matter proceeded. The plaintiff having now prevailed is entitled to the litigation costs authorized under the statute. Therefore, the court concludes that the plaintiff is entitled to recover litigation costs reasonably expended for the prosecution of its RCRA claim over the entirety of this case.

### B. Hourly Rate

The defendant does not offer any specific objection to the hourly rates charged by the various attorneys, experts, consultants, or support staff utilized by the plaintiff in prosecution of this case. Having reviewed these records, the court concurs with the plaintiff's expert, (Docket No. 136-1 at 3-5), and concludes that the hourly rates charged by these professionals are reasonable and commensurate with those charged by similarly experienced professionals for comparable work in the Milwaukee area.

### C. Hours Reasonably Expended

The defendant raises numerous objections to the plaintiff's request for attorneys' fees, the most significant objection being that the plaintiff failed to adequately exclude time its attorneys

and other professional spent prosecuting the plaintiff's state law claims. For example, it contends that only up to 50% of the time that plaintiff's counsel spent preparing the initial Rule 26 disclosures and only a small portion of the time they spent responding to the defendant's motion for summary judgment could be attributed to the RCRA claim. Moreover, the defendant argues that the billing entries are not sufficiently specific, thus making it impossible to discern whether the time related to the RCRA claim or if the time was reasonable. The defendant argues that the plaintiff's attorneys took excessive time doing certain tasks such as writing demand letters or preparing the pre-filing notice to the defendant. Finally, the defendant argues that the plaintiff should not be reimbursed for time its attorneys spent preparing a motion for summary judgment because, in the view of the defendant, the motion was plainly meritless. The court shall consider the arguments raised in the defendant's brief when the court makes its independent review of the billing records submitted by the plaintiff.

The court begins its analysis by addressing in general terms the overlap between the plaintiff's state law claims and RCRA claim. In its complaint, in addition to its RCRA claim, the plaintiff alleged that defendant Petro-Chemical breached its contract with NEBAT, (Docket No. 1, ¶¶86-91), Tanknology was negligent, (Docket No. 1, ¶¶92-97), and both created a nuisance, (Docket No. 1, ¶¶98-105). These claims all emerge from a common core of facts—the fuel oil spill. There is undoubtedly much overlap between these claims; under any claim the plaintiff must be able to prove not only how the spill happened but also the extent of the contamination and what it will take to clean it up. If work was necessary to the RCRA claim, it is fully compensable, even if it might have also been relevant to the state law claims. But the RCRA claim is not coextensive with the state law claims. Just one example is the fact that RCRA does not permit the recovery of compensatory damages. Thus, any efforts solely related to

investigating, pursuing, or proving the monetary damages the plaintiff sustained were necessarily unrelated to its RCRA claim and thus not recoverable. The question that guides the court's analysis is, "What litigation costs would have been avoided had the state law claims not been prosecuted in this action?"

In its spreadsheet of the time its attorneys spent on this case, the plaintiff states that 79.1% of its attorneys' fees are attributable, at least in part, to the RCRA claim while 20.9% relate solely to the state law claims. (Docket No. 137-2 at 130.) Based upon the court's knowledge of this case and experience regarding litigation generally and of similar sorts of cases, this division does not strike the court as unreasonable. But the court shall nonetheless consider each of the specific objections the defendant raises in its brief in opposition to the plaintiff's request and in assessing the alleged lack of specificity in counsel's billing entries further discuss the overlap between the RCRA and state law claims.

1. **RCRA Pre-Filing Notice and Demand Letters**

The defendant challenges the amount of time that the plaintiff's attorneys devoted to preparation of demand letters, (Docket Nos. 145-13, 145-14), and the RCRA pre-filing notice, (Docket No. 145-15). (Docket No. 143 at 21-22.) The defendant states that counsel spent more than 23 hours preparing these letters. (Docket No. 143 at 21.) But the defendant's calculation of hours spent preparing the demand letters includes tasks that do not appear related to the preparation of the letters. (See, e.g., Docket No. 145-5 at 1 (including entry for "Extended conference with R. Engel regarding expert witness and preparation of Attorney Work Product/Attorney Client engagement letter.") By the court's calculation, the plaintiff was charged for 17.5 hours of work preparing the two demand letters. Although these letters together cover only about 7 pages, (Docket Nos. 145-13; 145-14), one could expect the presentation of

the substantial content to consume the time expended. This research and investigation might be appropriately characterized as work done preparing the demand letters, and viewed in this light, court finds 17.5 hours an entirely reasonable amount of time to devote to these tasks.

Likewise, the court finds that the 26.92 hours expended preparing the RCRA pre-filing notice, (Docket No. 145-15), were reasonable and necessary given the amount of effort the preparation of this notice could be expected to entail. These documents were not routine efforts to settle a case short of litigation but rather a formal document that had to be executed in compliance with the statute, see 42 U.S.C. § 6972(b), lest a defect should derail the plaintiff's efforts to hold the defendant accountable.

The defendant's expert offers little to support his position that the fees sought by plaintiff's counsel for this work should be cut in half. This position appears arbitrary and divorced from any specific factual analysis other than the expert's general supposition that plaintiff's counsel should have been able to complete the task quicker.

**2. Rule 26**

The defendant's expert states, "I believe that allocating 100% of this time [preparing NEBAT's initial Rule 26 disclosures] to RCRA is incorrect, and accordingly have reduced the amount Reinhart allocated to RCRA by half." (Docket No. 145-1 at 18.) The expert does not explain how he concluded that a 50% reduction is appropriate. He does not point to any specific entry on the plaintiff's relevant time records, which he appended to his report, (see Docket No. 145-7), that he believes contains work not related to the RCRA claim. Nor does he point to any particular document, such as the plaintiff's Rule 26(a)(1) disclosures or the parties' Rule 26(f) report to support his conclusion. The expert's 50% reduction appears to simply be an educated guess on his part.

9

The plaintiff does not actually attribute all its attorneys' time to the RCRA claim. The actual percentage of the work included in Exhibit F of the defendant's expert's report, (Docket No. 145-7) (which the plaintiff does not disagree represents an accurate accounting of the time it spent on the initial Rule 26 disclosures), is just under 98%. While this might not seem significantly different than 100%, this does amount to nearly three hours of work.

The court has reviewed the descriptions of the tasks performed, and there is nothing in any entry that jumps out as being improperly attributed to the RCRA claim. The court has also reviewed the plaintiff's Rule 26(a)(1) initial disclosures, which were previously submitted to the court, (Docket No. 127-4), and notes that a portion of this report involves a computation of damages. This tabulation would relate only to the state law claims and undoubtedly took some amount of time. A review of the remainder of the statement does not identify anything that the court recognizes as not also relating to the RCRA claims. Finally, the court has reviewed the parties' Rule 26(f) report, (Docket No. 28), and similarly does not identify anything that suggests work that was applicable to only the state law claims. Thus, in the absence of the defendant directing the court to any entry that appears improper or other evidence suggesting that a significant amount of the work undertaken for the purpose of the initial Rule 26 disclosures was unrelated to the RCRA claims, the court is left with the question of whether the plaintiff's attorneys could be reasonably expected to complete the work regarding damages contained in its initial disclosures within the roughly three hours its billing records attributed to its state law claims? The court believes it could. Thus, the court finds the plaintiff's requested attorneys' fees related to the initial Rule 26 disclosures to be reasonable and recoverable.

### 3. Response to Defendant's Motion for Summary Judgment

The defendant argues that of the 189.83 hours that the plaintiff's attorneys billed for their work responding to the defendant's motion for summary judgment, only 5% could be attributed to litigating the RCRA claim. (Docket No. 143 at 19-20.) The plaintiff alleges that with respect to its response to the defendant's motion for summary judgment, 76.85 hours, or roughly 40% of its attorneys' time, were incurred due to the RCRA claim.

The defendant's motion for summary judgment raised the question of whether maintenance costs and trustee fees were recoverable under either RCRA or the plaintiff's common law claims. (Docket No. 58.) One need only read the briefs submitted by the parties regarding the defendant's motion for summary judgment to recognize that the defendant's proposed 5% allocation is entirely unreasonable. In substance, the briefs are divided roughly equally between the RCRA and state law claims. Other matters such as the facts, supporting affidavits, and certain boilerplate law were generally common to both claims and thus would be fully compensable under 42 U.S.C. § 6972(e). Based upon this sort of review, it would appear that well over 50% of the plaintiff's attorneys' fees could be attributed to its RCRA claim. Thus, having reviewed the brief and other documents submitted to the court and the billing records related to their preparation, the court has no difficulty concluding that attributing roughly 40% to the RCRA claim is reasonable.

### 4. Plaintiff's Motion for Summary Judgment

In the view of the defendant, the plaintiff's motion for summary judgment, (Docket No. 46), was plainly meritless, and therefore none of the costs incurred in preparing this motion should be recoverable. Specifically, the defendant argues that there was plainly a dispute of material fact that precluded summary judgment in the plaintiff's favor, and with respect to its

claim against Petro-Chemical, its theory of liability was destined to fail because it was contrary to controlling precedent.

Although the plaintiff did not prevail on its motion, the court does not find that the motion was without merit and therefore rejects the defendant's argument that costs incurred in its prosecution should be excluded from the plaintiff's recovery. The evidence so strongly supported NEBAT's theory that Tanknology's technician caused the fuel spill when he reconnected the lines incorrectly that the plaintiff could reasonably argue that no reasonable finder of fact could find otherwise. Moreover, the plaintiff's motion for summary judgment served the valuable purpose of narrowing the issues for trial. For example, the court concluded that Tanknology's argument that its actions were outside the scope of RCRA was not supported by the text of the statute.

As for the aspects of the motion addressing the plaintiff's claim against Petro-Chemical, again, the court does not regard the plaintiff's position as meritless. The defendant suggests that the plaintiff's position was clearly contrary to controlling precedent of the Court of Appeals for the Seventh Circuit. (See Docket No. 143 at 23.) To the contrary, as the court's decision reflects, the precise question of whether a party may be a contributor under RCRA because it hired the malfeasant sub-contractor appeared unsettled in this circuit. Simply because the court ultimately rejected this argument does not in hindsight make the plaintiff's position unfounded. The court left open the possibility that it could establish that Petro-Chemical contributed to the release of hazardous waste; in its summary judgment decision, the court held only that the plaintiff required more than what it presented in support of its motion.

5. **Vague Entries and Block Billing**

Finally, the defendant argues that $179,439.57 should be deducted from the plaintiff's request for attorneys' fees because many of the billing entries are vague or lump together a number of unrelated tasks making it difficult to determine whether the work was necessary to the RCRA claim.

The court has thoroughly reviewed the billing records and counsel's "block billing" is not particularly concerning to the court. To the contrary, if plaintiff's counsel had broken up each task into its own entry, surely the defendant would be arguing that by doing so, counsel was improperly attempting to pad a timesheet. See Pappenfuss v. Receivable Mgmt. Servs. Corp., 2013 U.S. Dist. LEXIS 138369, 16-17 (E.D. Wis. Sept. 26, 2013) (noting how by improperly breaking up short related tasks into separate entries, it is possible for an attorney to bill a week's worth of work in a single workday). The court finds that by grouping tasks together, counsel reasonably and appropriately reduced costs for the client.

As for the lack of specificity, billing records need not be hyper-detailed narrative accounts of every action an attorney performed in a case. Creating such records would be a gross waste of counsel's time (and thus a client's money), and in the present context, disclosure of such information would likely run afoul of counsel's continued duties of confidentiality. Rather, billing records need be only as detailed as a reasonable paying client would consider satisfactory. Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008) (quoting In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001)). Here, the plaintiff did pay the fees billed without any guarantee that its costs would be reimbursed by the defendant, thus providing prima facie evidence that the specificity of the billing records was reasonable. But the relevant inquiry here is narrower because the court must view the billing records from the perspective of a

hypothetical client who would expect to pay only for work done on the RCRA claim and exclude work done on the related state law claims. Thus, the court reviews the billing records from the perspective of a hypothetical reasonable fee-paying client who expects to pay only for work that was necessary to the prosecution of the RCRA claim but not for work relevant only to the state law claims. If such a client was presented with the documentation contained in the spreadsheet presented to the court, (Docket No. 137-2), would that client find the charges reasonable and be satisfied that it was not being improperly charged for work that was relevant only to the state law claims?

The court has thoroughly reviewed the billing records, (Docket No. 137-2), and concludes that a reasonable client would question whether work on the state law claims was appropriately fully excluded from the work for which it was charged. A fundamental defect underlying the allocation between the state law and RCRA claims is the fact that this division was made retroactively, at the conclusion of the case, as part of plaintiff's counsel's preparation of the fee petition. (Docket No. 151 at 5, ¶13.) It is simply implausible that anyone, years later and aided by nothing more than a brief description to refresh his recollection, could accurately recall what portion of a task was attributed to which claim. Moreover, this retroactive analysis was completed by just one attorney rather than each person who performed the task. Again, it is implausible that a person could accurately differentiate the work performed by his colleagues. One might argue that this imprecision would be inconsequential because the under-estimates would be cancelled out by the over-estimates. But under the circumstances presented here, the reviewing attorney might be suspected of having a natural bias towards under-estimating the amount of work devoted solely to the state law claims.

On just the first page of billing records, two entries, including the very first entry on the records, raise questions of whether time has been appropriately attributed to the state law claims. The first entry states, in relevant part, "analysis of claims arising under negligent tank testing," and a later entry charges for work on "possible causes of action for cost recovery." (Docket No. 137-2 at 1.) Both entries attribute all of this work to the RCRA claim. The use of the plurals "claims" and "causes of action" necessarily suggest that this work was not limited to the single RCRA claim, and this conclusion is further supported by the use of the word "negligent," which is relevant to a state law claim. (See also Docket No. 137-2 at 90 ("Review complaint and basis for *claims* against Petrochemical" attributed solely to RCRA claim); Docket No. 137-2 at 99 ("Work on notes regarding *common law claims*…" attributed solely to RCRA claim); Docket No. 137-2 at 104 ("work on outline for trial to prove up *claims and damages*" attributed solely to RCRA claim) (emphasis added).) Of course, there might be a reasonable explanation for why this work was all attributable to the RCRA claim, (see, e.g., Docket No. 137-2 at 121 (imprecisely referring to RCRA "claims")), but absent such an explanation, a reasonable prudent client would question whether it is being inappropriately billed for work on the state law claims.

Similarly, there are numerous billing entries that refer to work related to damages that were attributed wholly to the RCRA claim. (See, e.g., Docket No. 137-2 at 3 ("Transmit … cost summary and damages claim by letter to [defendants]"); 137-2 at 15 ("work on damages estimate regarding sale of Fife house"); 137-2 at 15 ("work on damages summary;" 137-2 at 40-41 (conference regarding revision of damages spreadsheet); 137-2 at 41 ("Work on settlement damages…"); 137-2 at 41 ("Work … on the chart summarizing damages…"); 137-2 at 41 ("Work on summary of damages …"); 137-2 at 45 ("Work on documentation of costs and damages …"); 137-2 at 47 ("Provide documentation as it pertains to damages."); 137-2 at 47

15

("Prepare packet for … all documentation to support cost summary for damages claim…"); 137-2 at 62 ("Revise mediation statement to add corrected damages calculation."); 137-2 at 100 ("work on summary of costs to date and damages for trial"); 137-2 at 126 ("…review damages…").) Again, it would appear improper to attribute this work solely to the RCRA claim because damages are recoverable only by way of the state law claims. While these billing entries might be the result of counsel using imprecise language, (see, e.g., Docket No. 137-2 at 62 (referring to "RCRA damages"), a reasonable client would expect a greater explanation to assure it was not being improperly billed.

Because a reasonable client would demand greater specificity, the court cannot compel the defendant to fully reimburse the plaintiff for all of its claimed expenses. Thus, the court turns to the question of how to appropriately adjust the fees claimed by plaintiff's counsel to account for the absence of requisite specificity in counsel's billing entries. A line-by-line review of 130 pages of billing records would be inefficient and would still result in the court being unable to offer much more than an informed guess as to what deduction is appropriate. Rather, the court finds the most appropriate means to account for this deficiency in specificity is to reduce the proposed fee by a reasonable percentage. See Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) (citing Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc., 776 F.2d 646, 651, 657-58 (7th Cir. 1985)).

As noted above, plaintiff's counsel already made a substantial reduction of 21% in its overall fees to account for work that related solely to the state law claims. Although this division appears superficially reasonable, closer analysis of the actual billing records appears that it might not have been, or at a minimum, the descriptions of work were insufficient to support the entirety of the plaintiff's claim. It is clear to the court that the great bulk of the work in this case related

to solely to the RCRA claim or would have had to been performed irrespective of the prosecution of the related state law claims.

In the court's review of the billing records, it has detected no discernable impropriety with the vast majority of the entries. Although every description could have been more specific, relatively few are problematically vague. This review, along with the facts that the court expects that prosecution of the state law claims to involve comparatively little additional work beyond that necessary to prosecute the RCRA claim and that plaintiff's counsel has already made a substantial reduction to account for time spent on the state law claims persuades the court than any further additional deduction should be small. In arriving at an appropriate figure the court has also taken into account the fact that counsel's decision to only retroactively allocate work between the RCRA and state law claims undoubtedly contributed to needless error in this division. Therefore, the court concludes that a reduction of 5% adequately accounts for the vagueness of counsel's billing records. The $687,423.26 sought by the plaintiff, (see Docket No. 137-2 at 130), shall be reduced to $653,052.10. After considering the relevant factors, the court finds that circumstances do not warrant any further adjustment of the lodestar amount, either upward or downward.

The plaintiff also seeks $9,170.63 in costs not otherwise recoverable pursuant to Rule 54(d)(1). The plaintiff arrived at this figure by taking its total costs ($21,460.94), (Docket No. 137-2 at 131), excluding the costs recoverable under Rule 54(d)(1), ($9,958.76), further excluding certain overhead costs ($32.50 + $14.22 + $4.34), to arrive at a total of $11,593.72. (Docket No. 137 at 5, ¶10.) To account for the portion of these fees that might have been attributable solely to the state law claims and thus not recoverable under 42 U.S.C. § 6972(e), it multiplied this figure by the percentage of overall work it attributed to the RCRA claim it found

17

in its analysis of its billing records (79.1%) to arrive at a final total of $9,170.63. (Docket No. 137 at 5, ¶10.) Other than a conclusory statement that the claimed costs should be reduced to $2,967.99, backed by nothing more than a citation to the entirety of its expert's report, (Docket No. 143 at 8), the defendant does not offer any specific objection to the costs sought by the plaintiff. An expert's report is not a substitute for a party's brief and therefore the court regards the plaintiff's request for these costs to be unopposed.

The court has reviewed the costs sought and finds them reasonable and necessary to the prosecution of the RCRA claim. Therefore, the court shall award the plaintiff the costs sought. However, because the plaintiff's calculation relies upon the flawed and inadequately supported claim that 79.1% of its work was devoted to the RCRA claim, the court finds that these other costs must similarly be reduced by the 5% measure the court found appropriate above. To this total the court shall add $800.00 for the cost of Alpha Terra Science's supplemental declaration. (See Docket No. 150 at 3.) Therefore, the plaintiff shall recover costs totaling $9,512.10.

### III. SUPPLEMENTAL FEE PETITION

After filing its initial fee petition, the plaintiff supplemented it to seek costs incurred related to its filing of the initial fee petition and other subsequent actions. (Docket No. 150.) The defendant responded to this supplemental petition (despite this court's order that its response be limited to the plaintiff's supplemental fee petition the defendant nonetheless apparently regarded much of its response as an opportunity to submit a sur-reply; the court disregards these arguments). (Docket No. 155.) The plaintiff subsequently sought to again supplement its fee petition, (Docket No. 159), but the court denied this request, (Docket No. 161). In its supplemental fee petition, the plaintiff seeks an additional $42,296.36 for expenses incurred from July 31, 2013 to October 10, 2013. (Docket No. 150 at 2.)

The defendant's first objection is to the $8,140 spent to retroactively allocate prior work between the RCRA and state law claims. The defendant argues that this work could have been eliminated if it was done contemporaneously; an experienced environmental law firm should have been able to anticipate the need to differentiate between the causes of action and its failure to do so not only created unnecessary work but undoubtedly made the task needlessly imprecise.

The court agrees with the defendant. The retroactive analysis was unnecessary and therefore not compensable; counsel's allocation between the state law and RCRA claims should have been done at the time each professional initially entered his or her time spent working on this matter. Having reviewed the billing records submitted by the plaintiff, (Docket No. 151-2), and the defendant's expert report, (Docket No. 157-1 at 3-4), the court finds that $8,140.00 appropriately accounts for the cost of this unnecessary work. Accordingly, $8,140.00 shall be deducted from the costs and fees sought in the supplemental petition.

Having considered the defendant's remaining arguments, the court disagrees that any of the remaining fees sought were excessive or otherwise unnecessary or that any further adjustment of the fees and costs sought in the supplemental petition is appropriate.

The court granted the plaintiff leave to submit an oversized brief in part because this was not merely a reply brief but also a supplemental fee petition, and thus the fact that the plaintiff submitted a 30 page reply when the local rules authorized only 15 is not a basis to cut in half the fees incurred preparing that brief. And in any event, it is illogical to suggest that a 15 page brief would take half the time to prepare as a 30 page brief. Trying to edit and re-edit to get 30 pages of arguments to fit into the 15 pages allotted might well have taken significantly more time.

The court also rejects the suggestion that it must limit fees related to preparation of the fee petition to a ratio of 1.6 hours for every 100 hours spent on the merits of the case. The

inquiry that guides the court's analysis is whether the fees are reasonable and necessary and, based upon the court's review, the fees sought are.

The court shall also award the plaintiff the $491.36 sought for additional costs that are otherwise not compensable under Rule 54(d)(1). The defendant does not offer any substantive objection to these costs other than again baldly stating that its costs should be reduced by $186.55. (Docket No. 155 at 2, 10.) Absent any argument in the defendant's brief to support this contention, the court disregards it.

## IV. CONCLUSION

For the reasons discussed above, pursuant to 42 U.S.C. § 6972(e), the defendant shall pay to the plaintiff a total of $696,720.60. This represents $653,052.10 for the time attorneys and other professionals spent initially prosecuting the plaintiff's RCRA claim against the defendant; $9,512.10 in costs not otherwise recoverable under Rule 54(d)(1); $33,665.00 in reasonable and necessary attorneys' fees set forth in the supplemental petition; and $491.36 in additional costs not otherwise recoverable under Rule 45(d)(1).

This order does not address the plaintiff's costs under Fed. R. Civ. P. 54(d)(1) in the amount of $9,958.76, (Docket No. 153), which shall be resolved in accordance with Civil L.R. 54.

**IT IS THEREFORE ORDERED** that pursuant to 42 U.S.C. § 6972(e), defendant Tanknology, Inc., and its insurers, Zurich American Insurance Company and Steadfast Insurance Company, shall pay to the plaintiff a total of **$696,720.60**.

Dated at Milwaukee, Wisconsin this 19th day of March, 2014.

AARON E. GOODSTEIN
U.S. Magistrate Judge